**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

DAVID CAMP,

Plaintiff,

v.

SOO LINE RAILROAD COMPANY, d/b/a CP RAIL SYSTEMS,

Defendant.

Civil No. 01-1598 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

William J. Egan, EGAN & ASSOCIATES, 150 Edina Executive Plaza, 5200 Willson Road, Edina, MN 55424, for plaintiff.

Susan J. Thompson and Robert Zeglovitch, LEONARD, STREET AND DEINARD, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for defendant.

Plaintiff David Camp filed this employment discrimination action against his former employer, Soo Line Railroad Company, d/b/a CP Rail System ("CPR"), alleging racial and disability discrimination, and retaliation for exercising his rights under the Family Medical Leave Act ("FMLA"). Defendant moved for summary judgment on plaintiff's claims of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363.01 *et seq.*, and his claims of retaliation under the FMLA, 29 U.S.C.

FILED 02.20.03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

§§ 2601 *et seq.*[1] For the reasons discussed below, the Court grants defendant's motion as to the claims of disability discrimination, and denies the motion in all other respects.

## BACKGROUND

Plaintiff worked as a carman in the St. Paul and Minneapolis yards of CPR from April of 1993 until he was terminated on September 1, 2000. Plaintiff had a history of attendance problems at CPR beginning in 1999 when he was absent without informing his supervisor on June 14, July 12, and July 15. On two days in that same time period, plaintiff was unable to complete his shift. CPR supervisors instigated a formal investigation. Upon receiving notice of that investigation, plaintiff requested leave through the Employee Assistance Program ("EAP") to address substance and alcohol abuse. The EAP leave was granted, and the formal investigation was abandoned. Plaintiff was on EAP leave for about seven months.

While on EAP leave, plaintiff was diagnosed with anxiety, which he considers a form of depression.[2] He claims he reported this diagnosis to his manager, Jim Johnson, before he returned from EAP leave. Plaintiff did not ask for accommodations when he returned to work and did not inform other supervisors of the anxiety. Since receiving treatment for his substance abuse problems, plaintiff claims that the problems related to his anxiety have started to subside. Plaintiff takes medications for his anxiety, and when

[1] Defendant does not move for summary judgment on plaintiff's claims of disparate treatment and retaliation on the basis of plaintiff's race.

[2] Plaintiff is also dyslexic, but does not base any claims in this lawsuit on that condition.

he is medically compliant, the medications improve his ability to function. He testified at a deposition that he could do his job at CPR despite his anxiety.

Plaintiff returned from EAP leave in March of 2000. He then missed work on May 13, June 18, and June 30, 2000. On July 10, 2000 CPR sent plaintiff notice of investigation and formal hearing regarding those absences. Approximately two weeks later, on July 24, 2000, plaintiff requested FMLA forms. He then requested intermittent FMLA leave on August 22, 2000, due to "deep-seeded depression." CPR granted the FMLA leave on August 24, 2000. Nonetheless, as a result of the investigation into the noted absences, plaintiff was terminated on September 1, 2000.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## II. Disability Claims

Disability claims under the Americans with Disabilities Act and the Minnesota Human Rights Act are typically analyzed under the *McDonnell-Douglas* burden-shifting analysis.[3] *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017-18 (8th Cir. 1999). Under that analysis, plaintiff must first establish a prima facie case of disability discrimination. The burden then shifts to defendant to put forth a legitimate nondiscriminatory reason for the adverse employment action. If the employer meets this burden, plaintiff must show sufficient admissible evidence from which a rationale fact-finder could find that the proffered reasons are either untrue or were not the real reasons for the action, and that instead, intentional discrimination was the real

[3] Disability discrimination claims under the ADA and the MHRA are assessed under the same standards. *See Weber v. Strippit, Inc.*, 186 F.3d 907, 912 n.4 (8th Cir. 1999).

reason. *Dammen v. UniMed Med. Ctr*, 236 F.3d 978, 980-81 (8th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)); *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1127 (8th Cir. 1998).

**A. Prima facie case**

To meet his initial burden, plaintiff must show (1) that he was disabled within the meaning of the ADA; (2) that he was qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) that he suffered an adverse employment action. *Sprenger v. Home Loan Bank Bd.*, 253 F.3d 1106, 1113 (8th Cir. 2001) (citing *Allen v. Interior Constr. Serv., Ltd.*, 214 F.3d 978, 981 (8th Cir. 2000)).

**1. Disability**

"Disability" under the ADA, means a physical or mental impairment that substantially limits a major life activity. 42 U.S.C. § 12102(s)(A). "Major life activities" include caring for oneself, walking, seeing, and working. 29 C.F.R. § 1630.2(i). "Substantially limits" with respect to the major life activity of working means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Id.* § 1630.2(j)(3)(i). For the purposes of this motion, the Court assumes that working qualifies as a major life activity. *See Sutton v. United Airlines*, 527 U.S. 471, 473 (1999) (assuming without deciding that work is a major life activity); *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 491 n.3 (8th Cir. 2002) (recognizing that the Supreme Court has not ruled conclusively that working constitutes a major life activity).

Depression or anxiety can certainly be an impairment, and in some cases it may substantially affect a major life activity and therefore amount to a disability under the ADA. *See Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir. 1996). However, the determination of whether one is disabled must be made with reference to mitigating or corrective measures. *Sutton*, 527 U.S. at 488-89 (finding that plaintiffs with severe myopia were not "disabled" because with corrective lenses their vision did not interfere with substantial life activity); *Spade v. City of Walnut Ridge,* 186 F.3d 897, 900 (8th Cir. 1999) (holding that plaintiff was not disabled under ADA where he suffered from depression but with medication and counseling functioned "without limitation").

In this case, medication is a mitigating or corrective measure. Plaintiff testified that with medication, he was able to do his job at CPR. He also testified at a formal CPR hearing related to his absentee record that "[t]he medication has done me really good," and noted that he is likely to continue the medication. If plaintiff is able to do his job, even if he needs medication to accomplish it, he does not qualify as disabled under the ADA. *See Sutton*, 527 U.S. at 488-89; *Spade,* 186 F.3d at 900.

Plaintiff argues that despite his testimony that with medication he is able to perform his job, the fact that he had to take several days off even after beginning his medication proves that he cannot, in fact, do his job even with the medication. However, the evidence that plaintiff has submitted indicates that these absences occurred when he took himself off his medication.[4] Plaintiff offered a letter from his psychiatrist, which

[4] Plaintiff testified that he stopped taking his medication because it sometimes made him eat a lot and sometimes made him tired.

was read into the record at plaintiff's formal discipline hearing on August 10, 2000.[5] The letter reads, in pertinent part:

> [Plaintiff] has been diagnosed with depression disorder and has been on antidepressant medications. He apparently was not on any medications for part of one month, during which he experienced return of his depressive symptoms as well as anxiety.
>
> It is my understanding that he was not able to attend work due to relapse o[f] his depressive symptoms. He is to restart his medications and agrees to be med[ically] compliant.

Even if plaintiff were able to show he was unable to work at his job of carman due to his depression/anxiety, he would not have met his burden under the ADA. Instead, he must point to some admissible evidence that he is unable to work in either a class of jobs or a broad range of jobs. 29 C.F.R. § 1630.2(j)(3)(i); *see also Heisler v. Metropolitan Council*, Civ. 00-2749 RHK/JMM 2001 WL 1690052 at *8 (December 14, 2001) (granting summary judgment to defendants where plaintiff suffering from depression was unable to perform her night-shift job, but offered no evidence that she was precluded from a class of jobs). Plaintiff submits no evidence — medical or otherwise — that he cannot do a class of jobs or broad range of jobs. The only medical evidence submitted, the psychiatrist letter quoted above, makes no reference to an inability to work in a class of jobs or a range of jobs. Plaintiff has not testified that he cannot do his job as carman, let alone that he cannot do a range of jobs.

---

[5] Although this letter was read into the record at the August 10 hearing, the record before the Court does not indicate when the letter was dated.

Plaintiff instead argues that defendant "agreed" he was disabled when CPR granted his FMLA request. Plaintiff's contention that CPR's grant of plaintiff's requested FMLA leave somehow proves that plaintiff is disabled is not a tenable argument. *See Heisler*, 2001 WL 1690052 at *1, *8 (holding employee suffering from depression not disabled under ADA/MHRA definitions — fact that employer had granted FMLA leave not a factor in disability analysis). A grant of leave under FMLA is not equivalent to a determination that an employee is disabled.

In this case, CPR indicated that it had received plaintiff's request for FMLA leave, and CPR marked an "XX" next to the reasons for the request ("a serious health condition that makes you unable to perform the essential functions of your job"). CPR's acknowledgement of the receipt of the leave request does not prove that plaintiff in fact suffered from that serious health condition. Further, and perhaps more importantly, the standard for "disability" under the ADA requires more than a showing of a "serious health condition" — that serious health condition must substantially impair a major life activity. And where the major life activity is working, the impairment must prevent the individual from working in a class of jobs or a broad range of jobs — not just a particular job. As discussed, plaintiff offers no evidence that he is precluded from a class of jobs or a broad range of jobs.

Finally, even if plaintiff had pointed to evidence that would allow a jury to find that his depression significantly limited him in a broad range of jobs or a class of jobs, no evidence has been offered that such limitations are either permanent or long-term. *See Heintzelman v. Runyon*, 120 F.3d 143, 145 (8th Cir. 1997) ("Statutory disability requires

permanent or long-term limitations."). Plaintiff's deposition testimony and the limited medical evidence show that, with medication, plaintiff's depression improves significantly. There is no indication that plaintiff will not be able to continue his medication or that he will not maintain this level of medical improvement.

Plaintiff has not pointed to evidence from which a reasonable fact-finder could infer that his anxiety or depression substantially interferes with his ability to work in a class of jobs or a broad range of jobs. Because plaintiff is unable to show that he is disabled, within the meaning of the relevant statutes, the Court grants summary judgment to defendant on those claims.

## III. FMLA

The FMLA prohibits employers from interfering with, restraining, or denying the existence of or the attempt to exercise any rights provided under the statute. 29 U.S.C. § 2615(a)(1). Plaintiff claims that defendant violated this statute when they terminated him in retaliation for his request to take leave under the FMLA. The *McDonnell-Douglas* test is also followed in retaliation cases. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002) (hereinafter "*Allen Health Sys.*"). Therefore to meet his initial burden, plaintiff must show that he exercised rights under the FMLA; that he suffered an adverse employment action; and that there was a causal connection between the two. *Id.*

### A. Prima facie case

There is no dispute that plaintiff exercised his rights under the FMLA when he requested and was granted intermittent FMLA leave or that plaintiff suffered an adverse

employment action. However, defendant argues that plaintiff's FMLA claim fails as a matter of law because plaintiff has not offered sufficient evidence of a causal connection between plaintiff's exercise of his rights under the FMLA and the adverse employment action.

To establish the necessary causal connection, plaintiff must show that defendant's retaliatory motive influenced the decision to terminate him. *Kipp v. Missouri Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2000) (en banc). Plaintiff points to the temporal proximity between his request for leave under the FMLA and his termination as sufficient evidence of the causal connection. Although "[g]enerally, more than a temporal connection . . . is required to present a genuine factual issue on retaliation," *Allen Health Sys.*, 302 F.3d at 832, in some instances, the temporal connection will be enough to satisfy the causation requirement. *See, e.g, Allen Health Sys.*, 302 F.3d at 833 (finding that fourteen days between exercise of right and adverse employment action was sufficient, "but barely so" to establish causation); *Martinez v. Cole Sewell Corp.*, 233 F. Supp. 2d 1097, 1117 (N.D. Iowa 2002).

Defendant challenges the existence of a temporal connection, arguing that too much time separated plaintiff's request for time off under FMLA and the adverse employment action. *See Kipp*, 280 F.3d at 897 (interval of two months insufficient to establish causal connection). Defendant also argues any significance of temporal proximity is undercut by evidence that CPR had been concerned about the absenteeism before plaintiff requested leave. *See Allen Health Sys.*, 302 F.3d at 834 ("[e]vidence that

[defendant] had been concerned about a problem before the employee engaged in the protected activity" weakens the significance of temporal proximity).

Despite CPR's concern about absenteeism before the request for FMLA leave, plaintiff has pointed to a relatively close temporal proximity — only two weeks lapsed between his request for FMLA forms and his termination, and only eight days passed between the actual grant of leave and the termination. Therefore, the Court finds that the temporal proximity is enough, "but barely so" to satisfy the prima facie case. *See Allen Health Sys.*, 302 F.3d at 833 (temporal proximity sufficient to meet prima facie case even though employer was concerned about plaintiff's performance before she exercised her rights under FMLA).

**B. Nondiscriminatory reason**

Assuming plaintiff meets his initial burden, defendant must articulate a nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Defendant in this case asserts that plaintiff was terminated due to excessive absenteeism. Defendant has submitted sufficient evidence to show that plaintiff was absent from his job on several occasions. Excessive absenteeism is an acceptable nondiscriminatory reason for termination. *See Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903 (8th Cir. 1999); *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548 (8th Cir. 1993).

### C. Pretext

"[T]he *McDonnell Douglas* battle is only begun with the prima facie case." *Allen Health Sys.*, 320 F.3d at 833. Defendant has articulated a nondiscriminatory reason for the discharge, therefore the burden shifts back to plaintiff to "point to some evidence that employer's proffered reason is pretextual." *Id.* To make this showing, plaintiff must present evidence that (1) creates a question of fact as to whether the employers' proffered reason was pretextual and (2) creates a reasonable inference that the employer acted in retaliation. *Id.*; *see also Reeves*, 530 U.S. at 153.

Plaintiff's attempt to prove pretext requires more substantial evidence than that required in step one, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification. *See Sprenger*, 253 F.3d at 1111(citing *Stuart v. General Motors Corp.*, 217 F.3d 621, 635-36 (8th Cir. 2000) (concluding that proof possibly sufficient to establish a prima facie case was insufficient to establish pretext)). Even if a plaintiff has successfully proven his prima facie case, "[a] court may find . . . that in light of the employer's non-discriminatory rationale, the plaintiff's evidence does not permit a reasonable inference of discrimination." *Id.*

Courts hesitate to find "pretext or discrimination on temporal proximity alone, and look for proximity in conjunction with other evidence." *Sprenger*, 253 F.3d at 1114 (citing *Stuart v. General Motors Corp.*, 217 F.3d 621, 635-36 (8th Cir. 2000); *Nelson v. J.C. Penney Co., Inc.*, 75 F.3d 343, 346-47 (8th Cir. 1996)). Here, plaintiff relies on the temporal proximity, but he bolsters that proximity with allegations that other employees

were not subject to discipline for similar or higher levels of absenteeism. "Instances of disparate treatment can support a claim of pretext," *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994), though plaintiff has the burden of proving that he and the disparately treated non-disabled employees were "similarly situated in all relevant respects." *See id.* (quoting *Jones v. Frank,* 973 F.2d 673, 676 (8th Cir. 1992)); *Naylor v. Georgia-Pacific Corp.*, 875 F. Supp. 564, 577 n.9 (N.D. Iowa 1995). To determine if the disparately treated employees were "similarly situated", the Court considers relevant factors, including the offense and the decision-makers involved. *See Britton v. City of Poplar Bluff, Missouri*, 244 F.3d 994, 998 (8th Cir. 2001) (citations omitted).

As evidence of disparate treatment plaintiff cites a report prepared by the City of St. Paul, Department of Human Rights. In this report, the City determined that probable cause existed to find that CPR had unlawfully discriminated against a former CPR employee who was African American and a Muslim. At pages seven to nine of this report, the City catalogues the absentee records of several employees. Several of the employees had absentee records that appear worse than plaintiff's record. Although plaintiff has not offered evidence that the decision-makers were the same, the Court finds that this report, in conjunction with the temporal proximity is sufficient to prevent the Court from granting summary judgment to defendant on the FMLA retaliation claim.

**ORDER**

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant' motion for summary judgment [Docket No. 14] is **GRANTED in part and DENIED in part.** Defendant's motion is granted as to Counts IX and X of plaintiff's amended complaint [Docket No. 3]. Counts IX and X of plaintiff's amended complaint are **DISMISSED WITH PREJUDICE**

2. Defendant's motion is **DENIED** in all other respects.

DATED: February 20, 2003
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge